U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 25 2019
CLERK, U.S. DISTRICT COURT
By_____
         Deputy

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
FILED
October 3, 2019
Lyle W. Cayce
Clerk

No. 19-10311
Summary Calendar

TAYLOR FREELAND, Individually and as representative of the Estate of Billy LaRae Freeland, Deceased; JOSH FREELAND, Individually and as representative of the Estate of Billy LaRae Freeland, Deceased,

                Plaintiffs - Appellants

v.

TARRANT COUNTY, TEXAS; SHERIFF BILL E. WAYBOURN,

                Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC 4:18-CV-845

Before KING, GRAVES, and WILLETT, Circuit Judges.

PER CURIAM:*

  Taylor Freeland and Josh Freeland appeal the district court's dismissal of their lawsuit, arising out of an alleged violation of their father's Eighth Amendment rights. Taylor and Josh Freeland assert that their father, Billy LaRae Freeland, died as a result of deliberate indifference to his medical needs

---

 * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-10311

while he was an inmate at a prison in Tarrant County, Texas. For the following reasons, we AFFIRM the district court's dismissal of the claims against Tarrant County.

I.

On October 18, 2017, Billy LaRae Freeland was booked into the Tarrant County jail as a result of his conviction for driving while intoxicated. Jail personnel knew that Freeland had a history of alcohol abuse and placed him in a program to treat his alcohol-withdrawal symptoms. Medical staff from the Tarrant County Hospital District administered this program and used the Clinical Institute Withdrawal Assessment for Alcohol, a diagnostic tool, to assess Freeland's alcohol withdrawal.

On October 19, Freeland reported moderate tremors, which he described as normal. He was seen by a detoxification nurse on October 21. That nurse wrote, in Freeland's medical records, that he was naked, did not appear "oriented to place or time," and was "unwilling to let this nurse obtain his signs or assess him." His nurse commented that "[i]t is unclear if he has essential tremors or alcohol withdrawal tremors." The nurse subsequently conferred with a physician assistant, who prescribed Ativan, thiamine, and folic acid. The nurse returned to Freeland approximately three hours later. She noted that Freeland "continue[d] to refuse assessment and vital signs" but that he agreed to take seizure medication and Ativan. The nurse wrote that she would "continue to monitor" his condition. Around this time, Freeland was relocated to the "infirmary floor" due to his declining medical condition.

Around October 23, Freeland's condition deteriorated further, and he was reportedly "combative and resistant." He had an "[i]ncreased alcohol withdraw assessment score" and was relocated to the emergency room for further assessment at the county hospital. Freeland was suffering acute

2

No. 19-10311

respiratory and renal failure and was observed mumbling incoherently. He was later placed in the intensive care unit, where he died on November 4, 2017.

Taylor Freeland and Josh Freeland ("the Freelands"), the sons of Billy LaRae Freeland, sued Tarrant County, Texas, and Sheriff Bill E. Waybourn, in his official capacity, asserting claims under 42 U.S.C. § 1983 and the Texas Wrongful Death and Survival Statutes, Tex. Civ. Prac. & Rem. Code Ann. § 71.001, *et seq*. The Freelands alleged that Tarrant County and Waybourn provided constitutionally inadequate medical care to Freeland during his confinement. They also asserted that Tarrant County had a custom and practice of not properly evaluating the detoxification of inmates suffering from substance abuse. In response, Tarrant County and Waybourn filed a motion to dismiss based primarily on qualified-immunity grounds. The Freelands were permitted to amend their complaint three times, and Tarrant County and Waybourn responded with a similar motion to dismiss.

The district court granted the motion to dismiss, finding that the Freelands pleaded nothing more than conclusory allegations. The district court also found that the Freelands failed to plead that Tarrant County had an official policy, custom, or practice that caused a violation of Freeland's constitutional rights. The Freelands timely appealed only the district court's dismissal of their § 1983 claims against Tarrant County.

II.

"This court reviews a district court's grant of a motion to dismiss de novo." *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). "The grant of a motion to dismiss based on qualified immunity similarly is reviewed de novo." *Id*. Under this standard, we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). Nonetheless, these facts must "state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt. LLC*, 657

3

Case: 19-10311 Document: 00515173481 Page: 4 Date Filed: 10/25/2019
Case 4:18-cv-00845-A Document 38 Filed 10/25/19 Page 4 of 6 PageID 252

No. 19-10311

F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In addition, "a court ruling on a 12(b)(6) motion may rely on the complaint [and] its proper attachments." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). This includes documents attached to the motion to dismiss "that are referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).

### III.

Before holding a government liable under § 1983, a claimant must first establish that a constitutional violation occurred. *See, e.g., Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (noting that "unconstitutional conduct must be directly attributable" to the local government). Therefore, we first consider whether Tarrant County provided deliberately indifferent medical care in violation of Freeland's Eighth Amendment rights. We conclude that it did not.

### A.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Jones v. Tex. Dep't of Criminal Justice*, 880 F.3d 756, 759 (5th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "A plaintiff must show that officials 'refused to treat him, ignored his

4

Case: 19-10311 Document: 00515173481 Page: 5 Date Filed: 10/25/2019
Case 4:18-cv-00845-A Document 38 Filed 10/25/19 Page 5 of 6 PageID 253

No. 19-10311

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* at 759 (quoting *Domino*, 239 F.3d at 755). "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Under this standard, neither "the decision whether to provide additional treatment" nor a "failure to alleviate a significant risk" is sufficient to establish deliberately indifferent medical care standing alone. *Domino*, 239 F.3d at 756 (citations omitted). Moreover, a "delay in medical care" does not amount to a constitutional violation unless it is both deliberate and results in "substantial harm." *Delaughter v. Woodall*, 909 F.3d 130, 136-38 (5th Cir. 2018) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)). In the context of alcohol withdrawal, this court has suggested in dicta that "ignoring the dangers of alcohol withdrawal and waiting for a 'manifest emergency'" could constitute deliberate indifference in certain circumstances. *Thompson v. Upshur County*, 245 F.3d 447, 458 (5th Cir. 2001). Nonetheless, "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

## B.

Even when viewing well-pleaded facts in the light most favorable to the plaintiffs, the record establishes that Tarrant County did not act with deliberate indifference to Freeland's serious medical needs. As noted above, Freeland was placed in an alcohol-detoxification program upon booking, and medical personnel used the Clinical Institute Withdrawal Assessment for Alcohol to assess his condition. One day after booking, Freeland reported having moderate tremors, which he characterized as normal. Two days later,

No. 19-10311

Freeland was treated by a detoxification nurse, and he was unwilling to let her take his vital signs or assess him. Nonetheless, a physician assistant prescribed Ativan, thiamine, and folic acid. The nurse continued to monitor the situation, and Freeland was also relocated to the "infirmary floor" as his condition worsened. Approximately four days after his booking, Freeland had an "[i]ncreased alcohol withdraw assessment score," and was consequently relocated to the emergency room at the county hospital "for further evaluations."

This course of medical treatment does not clearly evince wanton disregard for Freeland's serious medical needs. Freeland's alcohol-withdrawal symptoms were monitored and assessed, and he subsequently received medical attention, treatment, and medication. There is no indication that Tarrant County disregarded the substantial risk of Freeland's alcohol withdrawal and avoided reasonable measures to abate it, nor did the county wait for a manifest emergency before providing medical attention.

To the extent the Freelands contest the degree and kind of treatment that Freedland received, it was not cruel and unusual punishment. At most, the failure to provide more aggressive treatment or alleviate a significant risk could be characterized as negligence or medical malpractice. Since the Freelands cannot plausibly establish that their father received deliberately indifferent medical treatment, there is nothing "that allows the court to draw the reasonable inference" that Tarrant County violated the Eighth Amendment, *Iqbal*, 556 U.S. at 678.

## IV.

For the foregoing reasons, we AFFIRM the district court's dismissal of the Freelands' claims against Tarrant County.